[12 NE3d 416, 989 NYS2d 418]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v REYNALDO PEREZ, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v IVAN CALAFF, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALEXANDER DOCKERY, Also Known as JOHN HARRIS, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TEOFILO LOPEZ, Also Known as GARCIA LOPEZ, Also Known as ISIDORO GARCIA, Appellant.

Argued February 20, 2014; decided April 3, 2014

90

## POINTS OF COUNSEL

*Howard R. Birnbach*, Great Neck, for appellant in the first above-entitled action. The appellant has a constitutional right to appeal his life sentence. (*People v Ventura*, 17 NY3d 675; *People v Yavru-Sakuk*, 98 NY2d 56; *People v Reid*, 34 Misc 3d 1234[A], 2012 NY Slip Op 50371[U]; *Abele Tractor & Equip. Co., Inc. v RJ Valente, Inc.*, 94 AD3d 1270; *Brooks v Key Trust Co., N.A.*, 26 AD3d 628, 6 NY3d 891.)

*Robert T. Johnson, District Attorney*, Bronx (*Noah J. Chamoy* and *Joseph N. Ferdenzi* of counsel), for respondent in the first above-entitled action. The Appellate Division did not abuse its discretion as a matter of law in dismissing this criminal appeal as abandoned after 16 years where defendant, who had retained counsel, supplied no reasonable justification for his delay. (*People v Yavru-Sakuk*, 98 NY2d 56; *People v Montgomery*, 24 NY2d 130; *People v Syville*, 15 NY3d 391; *Evitts v Lucey*, 469 US 387; *Martinez v Court of Appeal of Cal., Fourth Appellate Dist.*, 528 US 152; *People v De Jesus*, 54 NY2d 447; *Matter of State of New York v King*, 36 NY2d 59; *People v West*, 100 NY2d 23; *People v Taveras*, 10 NY3d 227; *People v Ventura*, 17 NY3d 675.)

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Claudia Trupp* of counsel), for appellant in the second above-entitled action. I. The Appellate Division abused its discretion as a matter of law by dismissing the appeal where there was no record evidence that Ivan Calaff voluntarily, knowingly, and intelligently waived his fundamental right to appeal. (*People v Ventura*, 17 NY3d 675; *People v Bradshaw*, 18 NY3d 257; *People v West*, 100 NY2d 23; *Halbert v Michigan*, 545 US 605; *People v Johnson*, 69 NY2d 339; *Carnley v Cochran*, 369 US 506; *People v Calvi*, 89 NY2d 868; *People v Callahan*, 80 NY2d 273; *People v Taveras*, 10 NY3d 227; *Swenson v Bosler*, 386 US 258.) II. The plea court denied Mr. Calaff the assistance of counsel and deprived him of his right to counsel of his choice when it sua sponte and without cause dismissed Mr. Calaff's assigned counsel and immediately appointed another lawyer who acted as a mere conduit for a plea offer to a serious felony. (*People v Griffin*, 92 AD3d 1, 20 NY3d 626; *People v Childs*, 247 AD2d 319; *People v Knowles*, 88 NY2d 763; *People v Arroyave*, 49 NY2d 264; *People v Knapp*, 57 NY2d 161; *People v McLean*, 15 NY3d 117; *People v Kinchen*, 60 NY2d 772; *Chandler v Fretag*, 348 US 3; *Powell v Alabama*, 287 US 45; *People v Hannigan*, 7 NY2d 317.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*David M. Cohn* and *David E. A. Crowley* of counsel), for respondent in the second above-entitled action. I. As this Court made clear in *People v West* (100 NY2d 23 [2003]), and as the legislature made clear by enacting CPL 470.60 (1), the Appellate Division had discretion to dismiss defendant's appeal following his unjustified, 19-year delay. (*People v Thomas*, 47 NY2d 37; *People v Syville*, 15 NY3d 391; *People v Taveras*, 10 NY3d 227; *People v Jackson*, 78 NY2d 638; *People v Alexander*, 97 NY2d 482; *People*

*v Frederick*, 45 NY2d 520; *People v Lopez*, 71 NY2d 662; *People v Mirenda*, 57 NY2d 261; *People v Lynn*, 28 NY2d 196.) II. Defendant's choice of counsel claim is not properly raised in this appeal. In any event, there is no record support for defendant's unpreserved claim that the trial court violated his right to counsel of his choice. (*People v Brown*, 40 NY2d 381; *People v Bautista*, 7 NY3d 838; *People v Ventura*, 17 NY3d 675; *People v Fetcho*, 91 NY2d 765; *People v Ramos*, 85 NY2d 678; *People v Coppa*, 45 NY2d 244; *People v Callahan*, 80 NY2d 273; *People v Tineo*, 64 NY2d 531; *People v Gray*, 21 AD3d 1398; *People v Griffin*, 20 NY3d 626.)

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Barbara Zolot* of counsel), for appellant in the third above-entitled action. I. Appellant's appeal of his 1986 juvenile offender conviction must be reinstated where due process and equal protection entitled him to counsel's assistance in applying for in forma pauperis relief and assignment of counsel. (*People v Ventura*, 17 NY3d 675; *People v Montgomery*, 24 NY2d 130; *Smith v Robbins*, 528 US 259; *Griffin v Illinois*, 351 US 12; *Evitts v Lucey*, 469 US 387; *Douglas v California*, 372 US 353; *People v Stokes*, 95 NY2d 633; *People v Emmett*, 25 NY2d 354; *People v Garcia*, 93 NY2d 42; *People v West*, 100 NY2d 23, 540 US 1019.) II. The Appellate Division could not dismiss appellant's appeal solely on the basis of the passage of time; alternatively, that court abused its discretion as a matter of law where appellant was a minor who understandably, though mistakenly, believed that his attorney was handling his appeal—a misconception encouraged by the prosecutor's statements at a subsequent proceeding—and never wilfully bypassed the state appellate process. (*People v Ventura*, 17 NY3d 675; *People v Montgomery*, 24 NY2d 130; *People v West*, 100 NY2d 23; *People v Allah*, 47 AD2d 738.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Deborah L. Morse* and *Gina Mignola* of counsel), for respondent in the third above-entitled action. The Appellate Division acted well within its discretion when, after having considered all available facts and circumstances, the court dismissed the appeal that defendant had abandoned for 22 years. (*People v West*, 100 NY2d 23; *People v Yavru-Sakuk*, 98 NY2d 56; *People v Montgomery*, 24 NY2d 130; *People v Seaberg*, 74 NY2d 1; *People v Taveras*, 10 NY3d 227; *People v Ventura*, 17 NY3d 675; *Ortega-Rodriguez v United States*, 507 US 234; *People v Eldridge*, 31 NY2d 820; *Molinaro v New Jersey*, 396 US 365.)

*Alison Wilkey*, New York City, for Youth Represent, amicus curiae in the third above-entitled action. I. The collateral consequences of prosecution and conviction that affect youth are more serious than for adults, elevating the importance of the right to appeal. (*Padilla v Kentucky*, 559 US 356.) II. Youth are fundamentally different from adults, impacting their ability to independently effectuate their right to appeal. (*People v Ventura*, 17 NY3d 675; *Roper v Simmons*, 543 US 551; *Graham v Florida*, 560 US 48; *People v Dunbar*, 104 AD3d 198, 21 NY3d 942; *People v Montgomery*, 24 NY2d 130; *Bounds v Smith*, 430 US 817; *Wolff v McDonnell*, 418 US 539; *Murray v Giarratano*, 492 US 1; *Cruz v Hauck*, 627 F2d 710.)

*Steven Banks, The Legal Aid Society*, New York City (*Kerry Elgarten* of counsel), for appellant in the fourth above-entitled action. It was an abuse of discretion for the Appellate Division to dismiss the appeal from a judgment after trial without a specific showing of prejudice by respondent and before the appeal issues had even been determined. (*People v Taveras*, 10 NY3d 227; *Ortega-Rodriguez v United States*, 507 US 234; *Taveras v Smith*, 463 F3d 141; *Estelle v Dorrough*, 420 US 534; *Degen v United States*, 517 US 820; *People v Ventura*, 17 NY3d 675; *United States v Smith*, 419 F3d 521; *United States v Delagarza-Villarreal*, 141 F3d 133; *United States v Sudthisa-Ard*, 17 F3d 1205; *United States v Reese*, 993 F2d 254.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*David M. Cohn* and *Hilary Hassler* of counsel), for respondent in the fourth above-entitled action. The Appellate Division appropriately dismissed defendant's appeal for failure to prosecute, where defendant took no action on his appeal for 13 years, including 11 years during which he was a fugitive from justice. (*People v Taveras*, 10 NY3d 227; *People v West*, 100 NY2d 23; *People v Thomas*, 47 NY2d 37; *People v Syville*, 15 NY3d 391; *People v Triola*, 174 NY 324; *People v Figueroa*, 82 NY2d 819; *Molinaro v New Jersey*, 396 US 365; *Ortega-Rodriguez v United States*, 507 US 234; *People v Smith*, 44 NY2d 613; *Goeke v Branch*, 514 US 115.)

### OPINION OF THE COURT

SMITH, J.

These four cases involve criminal appeals that were not pursued for more than a decade—in one case more than two decades—after the filing of a notice of appeal. In each case, the

Appellate Division dismissed the appeal on the People's motion. We hold that the dismissals in *People v Perez*, *People v Calaff* and *People v Dockery* did not violate defendants' constitutional rights and were proper exercises of discretion. We remit the fourth case, *People v Lopez*, to the Appellate Division so that counsel can be appointed to represent Lopez in opposing the dismissal of his appeal.

I

*Perez*

Reynaldo Perez was convicted of murder and manslaughter in 1996, and was sentenced to consecutive terms totalling 33⅓ years to life. On August 1, 1996, he filed a notice of appeal. In 1997, Perez's mother retained a lawyer whom we will call John Johnson to represent Perez on appeal, paying him a retainer of $30,000. Johnson did not prepare or file a brief.

The Departmental Disciplinary Committee for the Appellate Division, First Department began an investigation of Johnson in 2001. In 2003, the Committee notified Perez's mother that Johnson had been admonished for neglecting Perez's case. Apparently, Johnson continued to represent Perez after 2003, but he still did not pursue the appeal. In 2008, Johnson filed a motion in Supreme Court to set aside Perez's conviction under CPL 440.10. The motion was unsuccessful.

On August 22, 2012, Perez retained new counsel, who moved in the Appellate Division to enlarge the time to perfect Perez's appeal. The People cross-moved to dismiss the appeal. The Appellate Division granted the motion to dismiss on February 5, 2013, more than 16 years after the notice of appeal was filed (2013 NY Slip Op 63657[U] [2013]). A Judge of this Court granted leave to appeal (21 NY3d 946 [2013]), and we now affirm.

*Calaff*

Ivan Calaff was convicted of attempted burglary, on his plea of guilty, in 1993, and sentenced to 3 to 6 years. At sentencing, he was handed a printed form explaining the need to file a notice of appeal and describing the steps to be taken "[i]f you are without funds" to request the assignment of counsel. On April 15, 1993, the lawyer who represented Calaff at sentencing filed a notice of appeal. Calaff did not request the assignment of appellate counsel. He served his time and was released from prison in 1996.

Calaff was later convicted of several other crimes. Eventually, in 2004, he was adjudicated a persistent violent felon on a

burglary charge and was sentenced to 16 years to life. An appeal from the 2004 conviction was unsuccessful (*People v Calaff*, 30 AD3d 193 [1st Dept 2006]).

On May 9, 2012, the Center for Appellate Litigation, which had represented Calaff on the appeal from the 2004 conviction, moved to be appointed as his counsel on the appeal that had begun in 1993, and sought poor person relief. The Appellate Division assigned counsel, granted poor person relief, and enlarged the time to perfect the appeal (2012 NY Slip Op 76425[U] [2012]). The People moved to dismiss the appeal. In an affidavit submitted in opposition to the People's motion, Calaff asserted that the lawyer who represented him at sentencing had told him in 1993, in response to a question about the appeal: "Don't worry about that, I'll take care of it." In 2008, according to Calaff's affidavit, he began to make inquiries about the appeal from his 1993 conviction, but got no helpful response until the Center for Appellate Litigation agreed in 2012 to take the case.

On February 19, 2013, almost 20 years after the notice of appeal was filed, the Appellate Division granted the People's motion to dismiss, saying that defendant's attempt "to explain his failure to follow the instructions he received at sentencing. . . . is refuted by the sentencing minutes and otherwise without merit" (*People v Calaff*, 103 AD3d 500, 500 [1st Dept 2013]). A Judge of this Court granted leave to appeal (21 NY3d 1072 [2013]) and we now affirm.

*Dockery*

In 1986, Alexander Dockery, then 16 years old, was convicted of robbery and committed to the New York State Division for Youth for a term of 2 to 6 years. The lawyer who represented him at trial and sentencing filed a notice of appeal on his behalf on February 28, 1986. Nothing was done to pursue the appeal for 22 years. Meanwhile, Dockery, like Calaff, served his time, was released, and committed more crimes. In 2000, under the name John Harris, he was convicted of burglary and sentenced as a persistent violent felony offender to 25 years to life. His appeal from that conviction was unsuccessful (*People v Harris*, 304 AD2d 839 [2d Dept 2003]).

In 2008, Dockery moved pro se in the Appellate Division for poor person relief on his 1986 appeal. The People cross-moved to dismiss that appeal, and the Appellate Division granted the cross motion (2008 NY Slip Op 93213[U] [2008]). In 2011,

Dockery, now represented by the Center for Appellate Litigation, moved to reinstate the 1986 appeal on the ground that he did not have the assistance of counsel at the time of the People's previous motion, and that service of that motion was defective. The appeal was reinstated (2011 NY Slip Op 93236[U] [2011]), the People again moved to dismiss it, and that motion was granted on June 21, 2012, more than 26 years after the notice of appeal was filed (2012 NY Slip Op 76557[U] [2012]). A Judge of this Court granted leave to appeal (21 NY3d 911 [2013]), and we now affirm.

## Lopez

Teofilo Lopez, having absconded before trial, was convicted in absentia of several counts of robbery in 1999. He was sentenced to concurrent terms of imprisonment, the longest of which was 15 years. The record contains a form dated August 23, 1999, apparently signed on Lopez's behalf by his attorney, addressed "TO MY ATTORNEY/OR THE COURT CLERK," which says: "Please file a timely notice of appeal on my behalf." The parties agree that this document may be considered a timely notice of appeal.

Lopez remained a fugitive for approximately 11 years; nothing was done in that time to prosecute his appeal. In 2010, he was rearrested and returned to court. He was then resentenced to correct his original sentence, which had omitted a term of postrelease supervision (see People v Sparber, 10 NY3d 457 [2008]). The Legal Aid Society was assigned to represent him on appeal from the resentencing (2010 NY Slip Op 84894[U] [2010]).

In 2012, Legal Aid moved on Lopez's behalf to amend the order assigning counsel so that it applied to the 1999 conviction rather than the resentence, for "leave to file and serve a brief in support of reversing the judgment on direct appeal," and for other relief. The People moved to dismiss the appeal from the 1999 conviction for failure to prosecute. Legal Aid submitted an affirmation in opposition to this motion, making arguments on the merits and arguing, in the alternative, that the motion was premature because Legal Aid had not yet been assigned to the 1999 appeal, had not seen the trial record, and did not know what issues Lopez would raise.

The Appellate Division granted the People's motion to dismiss on October 25, 2012, more than 13 years after the notice of appeal was filed (2012 NY Slip Op 88716[U] [2012]). A Judge of

this Court granted leave to appeal (21 NY3d 1017 [2013]), and we now reverse and remit for further proceedings.

Defendants formulate their arguments on appeal differently, but we think all can be interpreted as making two arguments: that their constitutional rights to a fair appellate process were violated, and that, even if there was no constitutional violation, the Appellate Division abused its discretion in dismissing their appeals. Lopez also argues, as he did below, that the Appellate Division acted prematurely in dismissing his appeal before counsel could review the trial record and identify the issues to be raised on appeal. We reject the arguments made by Perez, Calaff and Dockery. We agree with Lopez that the Appellate Division acted prematurely, and in his case we do not reach any other issue.

II

Defendants are correct in asserting that they have a constitutional right to a fair appellate procedure that provides them "with the minimal safeguards necessary to make an adequate and effective appeal" (*People v West*, 100 NY2d 23, 28 [2003]). That right includes a right to "receive the careful advocacy needed 'to ensure that rights are not forgone and that substantial legal and factual arguments are not inadvertently passed over' " (*id.*, quoting *Penson v Ohio*, 488 US 75, 85 [1988])—i.e., a right to counsel. The *West* case establishes, however, that the procedure followed in *Perez, Calaff* and *Dockery* did not deprive the defendants in those cases of any constitutional right.

*West* bears a distinct resemblance to the cases now before us. The defendant there filed a notice of appeal but "failed to perfect his appeal for more than 14 years" (100 NY2d at 24). We held that the appeal was abandoned, and that the Appellate Division did not abuse its discretion in dismissing it. Noting that West had been given "clear instructions on how to apply for poor person relief" (*id.* at 28), we rejected his argument that he was constitutionally entitled to appointment of counsel to assist in preparing a poor person application.

Calaff's and Dockery's constitutional claims here are essentially identical to West's. They, like West, were given clear notice of how to obtain a lawyer at state expense, but failed year after year to ask for one. They, like West, suffered no constitutional deprivation when none was appointed. We reject Calaff's argument that *West* should be overruled.

Dockery seeks to distinguish his case from *West* on the ground that Dockery was only 16 when he first failed to request the

assignment of counsel to represent him on appeal. The distinction might be more persuasive if the failure had not continued until Dockery was 38. But even if we assume that youthful defendants are constitutionally entitled to some relaxation of the rule that defendants who want to obtain appellate counsel must follow the simple instructions given them for requesting that relief, they are not entitled to 22 years of indulgence. Dockery was an adult during the great majority of the time in which he failed to seek counsel to pursue his appeal, and his situation is not constitutionally distinct from that of other adults. *Dowd v United States ex rel. Cook* (340 US 206 [1951]), on which Dockery relies, is not in point. The State in *Dowd* had enforced an unconstitutional rule forbidding a prisoner from filing appeal papers; the Supreme Court held that a long lapse of time in which the prisoner took no action after the rule was rescinded was not a waiver of his constitutional claim. Here, the State did nothing to prevent Dockery from pursuing his appeal until the People moved in 2008 to dismiss it.

■ Perez's constitutional claim is more colorable than Calaff's and Dockery's, because Perez had a lawyer—one who was undoubtedly ineffective in failing to perfect the appeal that he was hired to pursue. We have held that a client who was victimized by his appellate lawyer's procedural errors has been deprived of his constitutional right to the effective assistance of counsel (*see People v Syville*, 15 NY3d 391, 397-398 [2010] [counsel ineffective for disregarding a timely request to file a notice of appeal]). But the long delay in Perez's appeal—from the notice of appeal in 1996 to the motion for an extension of time in 2012—cannot be attributed solely to Johnson's ineffectiveness. Perez knew at least by 2003, when Johnson was admonished by the Departmental Disciplinary Committee, that his lawyer was neglecting his case. At any time in the following nine years, if not sooner, he could have obtained another lawyer. His counsel said in a 2012 affirmation that Perez was "without funds to retain another attorney," but Perez has offered no explanation of why he failed to seek assigned counsel. *West* establishes that it is not unconstitutional to require a defendant to take some minimal initiative to assure himself adequate representation on appeal. The dismissal of Perez's appeal after his own lengthy neglect of it did not deprive him of any constitutional right.

## III

■ ■ ■ Nor can we conclude that the Appellate Division abused its discretion in dismissing Perez's, Calaff's and Dockery's appeals. Two compelling facts stand out in all three cases: the delays were extremely long, and the defendants did not have a good excuse for them. Delays like this are inconsistent with an orderly and efficient system of appellate procedure, and if tolerated can bring a system into disrepute. Even if we assume—a large assumption—that the People can show no specific prejudice from the delays, the Appellate Division was not required as a matter of law to permit these appeals to proceed.

In *Calaff* and *Dockery*, there are other reasons supporting the exercise of the Appellate Division's discretion in the People's favor. Both Calaff and Dockery, having served their original sentences, continued to ignore their pending appeals until after they were adjudicated predicate felons—and then sought counsel to challenge the long-ago convictions. The facts permit an inference that these defendants did not simply neglect their appellate rights, but consciously chose not to exercise them until they acquired a reason to do so. The inference is particularly strong in Calaff's case, because his 1993 conviction was based on his guilty plea—a plea with which he was presumably satisfied when he entered it, and with which he may still have been satisfied until the earlier conviction became a problem in future cases. Appellate courts are not required to accommodate such belated changes of strategy by entertaining stale appeals (*cf. West*, 100 NY2d at 27 [appeal held abandoned where the defendant "repeatedly attempted to bypass the state appellate process"]).

Perez has a more sympathetic case. There is no obvious strategic reason for his delay, and his mother did hire, at great expense, a lawyer who failed in his duty. But an unfortunate choice of lawyer does not entitle Perez, as a matter of law, to perfect his appeal 16 years after it was taken, where nine of those years elapsed after the lawyer's failure had been made the subject of a formal sanction, and where no reasonable excuse for that nine-year delay was offered.

## IV

■ We decide *Lopez* on a narrower ground: The Appellate Division should not have dismissed Lopez's appeal before assigning him counsel on that appeal and giving counsel a chance

to review the record. *Taveras v Smith* (463 F3d 141 [2d Cir 2006]) is directly in point. Taveras, like Lopez, had failed to appear for his trial, had been tried and convicted in absentia, and had remained a fugitive for years. Taveras's trial attorney, like Lopez's, filed a notice of appeal on his behalf, and the appeal remained dormant until Taveras was returned to court. The Appellate Division denied Taveras poor person relief and dismissed his appeal, without assigning counsel.

The United States Court of Appeals for the Second Circuit, considering Taveras's federal habeas corpus petition, found the Appellate Division dismissal to be "contrary to or an unreasonable application of settled Supreme Court precedent" (463 F3d at 143)—specifically *Douglas v California* (372 US 353 [1963]), which held that an indigent criminal defendant has a federal constitutional right to court-appointed counsel on his first appeal if the state has provided such an appeal as of right. The Second Circuit reasoned that since, under New York law, a decision to dismiss an appeal by a former fugitive is discretionary, Taveras was entitled to a lawyer to argue that the court should exercise its discretion to retain the appeal (*see also People v Kordish*, 22 NY3d 922 [2013] [following the Second Circuit holding in *Taveras*]).

There is no meaningful difference between this case and *Taveras*, except that Lopez, unlike Taveras, was not completely without counsel when his appeal was dismissed—counsel had been appointed on Lopez's 2010 appeal from his resentencing. But Lopez did not have counsel on the 1999 appeal, and that is a fact of practical, not just technical, significance: his counsel had not reviewed, or even seen, the record of his 1999 trial. A right to the assistance of appellate counsel has not been honored where counsel has not looked at the record. We therefore remit the *Lopez* case to the Appellate Division, which should appoint counsel for Lopez and then consider de novo, after receiving counsel's submissions, whether Lopez's appeal should be dismissed or retained.

Accordingly, in *People v Perez*, *People v Calaff* and *People v Dockery* the order of the Appellate Division should be affirmed. In *People v Lopez*, the order of the Appellate Division should be reversed and the case remitted to the Appellate Division for further proceedings in accordance with this opinion.

RIVERA, J. (dissenting). For the reasons stated by the majority I agree that the facts and law support affirmance of the Appellate

Division's dismissal in *People v Calaff*, and that reversal and remittal is required in *People v Lopez*, in order to permit counsel to review the record and make any warranted submissions on behalf of defendant Lopez (*see* majority op at 102). However, I part ways with the majority in *People v Perez* and *People v Dockery* and would reverse in both cases.

In *People v Perez*, the defendant's right to pursue a timely appeal was effectively thwarted by appellate counsel's violations of the professional duties and obligations he owed the defendant. Despite the defendant's years-long struggle to secure his attorney's services in furtherance of the appeal from his conviction, today's decision leaves him subject to possible life imprisonment without any appellate review of the merits of his claims. In *People v Dockery*, the record is bereft of any indication that the Appellate Division took into consideration that defendant was a juvenile when he was convicted and the impact of his age on the defendant's ability to seek assistance with his appeal. Unlike the majority, I would expressly hold the Appellate Division must consider age when deciding whether to dismiss an appeal for failure to timely perfect.

Today's majority opinions in *Perez* and *Dockery* violate the defendants' fundamental rights to appeal their appellate convictions and, as a consequence, the Court's decisions in these cases undermine public confidence in the legal profession and our system of justice. I dissent.

## I.

"[A] defendant has a fundamental right to appellate review of a criminal conviction" (*People v Yavru-Sakuk*, 98 NY2d 56, 59 [2002], citing *People v Harrison*, 85 NY2d 794, 796 [1995], *People v Montgomery*, 24 NY2d 130, 132 [1969], and CPL 450.10). A defendant's inexcusable delay in pursuing an appeal is grounds for dismissal (*see* CPL 470.60 [1] [appellate court may "dismiss such appeal upon the ground of . . . failure of timely prosecution or perfection thereof"]), but as we recognized in *People v Taveras*, the Appellate Division has broad authority to permit an appeal that is otherwise untimely to proceed (10 NY3d 227, 233 [2008], citing CPL 470.60 [1]). In fact, there is no legal impediment to the Appellate Division granting such permission in appropriate cases, regardless of the length of delay.

We have also recognized that "[t]he invariable importance of the fundamental right to an appeal, as well as the distinct role assumed by the Appellate Divisions within New York's hierarchy

of appellate review (*see* NY Const, art VI, § 5; *see e.g.* CPLR 5501 [c]), makes access to intermediate courts imperative" (*People v Ventura*, 17 NY3d 675, 680-681 [2011]). As a consequence, the Appellate Division's broad statutory authority to dismiss pending appeals cannot be accorded such an expansive view as to curtail defendants' basic entitlement to appellate consideration. As a matter of fundamental fairness, all criminal defendants shall be permitted to avail themselves of intermediate appellate courts as "the State has provided an absolute right to seek review in criminal prosecutions" (*id.* at 682 [citation omitted]; *see also* CPL 470.60 [1]). Where the Appellate Division exceeds acceptable bounds in the exercise of this authority, it abuses its discretion in dismissing the appeal (*see e.g. id.* at 679).

## II.

### *People v Perez*

Following his sentencing, in 1997 the defendant's family retained an attorney to prosecute the appeal and paid him $30,000 as payment in full for his services. After taking some initial steps on behalf of the defendant this attorney failed to perfect the appeal, and, as the record reflects, violated his professional obligations by neglecting the defendant to work on other clients' cases.

The attorney's failures were so egregious as to be grounds for the defendant's complaint to the Departmental Disciplinary Committee for the Appellate Division, First Department. As a result of its investigation, the Disciplinary Committee formally admonished the defendant's attorney for violation of the Code of Professional Responsibility, DR 6-101 (a) (3). In its 2003 letter to the defendant's mother, the Committee informed her that it had admonished the attorney for neglecting the defendant's case based on the attorney's admission that he performed "no work" on the appeal "for long periods of time, because he was working on other cases."

Even though the attorney did not complete the work he was paid for, he continued to represent the defendant, apparently because the defendant lacked funds to hire new counsel. Unfortunately for the defendant, this attorney failed to move for an enlargement of time to perfect his appeal. Instead, on September 12, 2008, the attorney moved to vacate the conviction, pursuant to CPL 440.10 (1) (h), wholly avoiding presenting

to the court his own professional failures and ineffectiveness in representing the defendant, and arguing instead that the trial counsel was ineffective for failing to challenge the legal sufficiency of the reckless/depraved indifference murder count. The People opposed, arguing that defendant had received overall meaningful representation at trial.

In December 2009, Supreme Court denied the motion in a one-paragraph decision stating, in part, that any alleged omission at trial by counsel "could have been raised as an issue on direct appeal (had defendant filed and perfected such an appeal)." In March, 2010, the attorney filed leave to appeal the denial of the 440 motion to the Appellate Division, which the Appellate Division denied in April 2010 (2010 NY Slip Op 67810[U] [2010]). No further action was taken by the attorney.

Then, in 2012, the defendant's newly retained counsel filed a motion to enlarge the time within which to perfect the defendant's appeal and attached a proposed brief for filing. The People cross-moved, pursuant to CPL 470.60, to dismiss the appeal for failure to timely prosecute. The Appellate Division, without opinion, denied the defendant's motion and granted the People's motion to dismiss the appeal (2013 NY Slip Op 63657[U] [2013]).

In this case, it cannot be disputed that the first appellate counsel's failure to perfect the appeal within the time limit set forth in the First Department's rules (*see* Rules of App Div, 1st Dept [22 NYCRR] § 600.8 [b]) and his subsequent ineffectiveness, placed defendant in peril of losing his right to appeal for failure to prosecute, and set in motion the events which ultimately resulted in the dismissal of the defendant's appeal. The attorney's neglect resulted in years of delay that the defendant could have spent seeking to appeal his conviction, and the money spent on the attorney could have been used to pay for actual services rendered by new counsel. Moreover, the defendant's efforts to secure the attorney's professional paid-for services required the expenditure of time and resources pursuing a complaint before the Disciplinary Committee. While the complaint resulted in the attorney's admonishment, this was insufficient to undo the damage already done to the defendant, who by then had no funds to retain new counsel. Expecting his paid-for legal services, the defendant again relied on his attorney. However, when the attorney had the opportunity he failed to pursue a direct appeal. Moreover, the attorney ignored one of the strongest arguments in favor of a motion for enlargement

of time to perfect the defendant's appeal: attorney neglect as found by the Disciplinary Committee.

The defendant's conduct, under the circumstances of this case, does not support dismissal of his appeal. First, the defendant does not bear any blame for the initial delay in seeking to perfect his appeal because it was his attorney who failed to work on the case. As the majority acknowledges, up to 2003 the defendant cannot be blamed for the delay in perfecting his appeal because the defendant's attorney "was undoubtedly ineffective in failing to perfect the appeal that he was hired to pursue" (majority op at 100, citing *People v Syville*, 15 NY3d 391, 397-398 [2010]). Second, the defendant took action against his attorney in order to secure proper representation. The record shows that the defendant and his family paid counsel, and when it appeared the attorney was derelict in his obligations to his client, he was reported to the Disciplinary Committee, which acknowledged and thanked "the initiative and forthrightness" displayed in reporting the attorney to the Committee. Third, the defendant's conduct throughout the years does not evince an abandonment of his right to appeal. Quite the opposite. For years, the defendant took all the appropriate steps to pursue his rights as provided for by our legal system: he retained an attorney to appeal his conviction; he complained to the appropriate professional disciplinary body about his attorney's failures which, as the Committee noted, makes it possible "to improve the quality of legal representation available to the public"; and he filed a motion to request an enlargement of time to perfect his appeal and briefed the merits in support of his motion. Fourth, nothing in the record suggests that the defendant sought to "game the system" by manipulating events or circumstances surrounding his conviction and appeal.

The majority, nevertheless, concludes that once the Disciplinary Committee informed the defendant in 2003 that his lawyer was neglecting his case, he should have acted to perfect his appeal, and having failed to do so until 2012, he cannot complain that the Appellate Division dismissed his appeal (majority op at 100). Thus the majority concludes that the delay attributable to the defendant is the type of extremely long delay that "can bring a system into disrepute" (*id*. at 101). I disagree that the defendant's actions were of such character that despite his own attorney's ineffectiveness, the defendant should be foreclosed from a direct appeal. This is not the case where the defendant sat back for years and allowed an opportunity to appeal to pass, and with it caused prejudice to the People.

While placing the blame on defendant, the majority too easily discounts the impact of the attorney's professional neglect, and continued representation of the defendant, his family and the viability of his appeal. For example, the defendant and his family were in a financially worse position from when they first retained the lawyer in 1997, having paid him thousands of dollars for undelivered services and having no additional financial resources to retain new counsel. The majority minimizes the significant financial hardship in which the defendant found himself because, according to the majority, the defendant could simply have requested assigned counsel. However, having already waited so long for his retained attorney to act, it was not unreasonable for the defendant to expect that, once admonished, the attorney would comply with his professional obligations. This choice seems even more plausible given that the Disciplinary Committee stated that the attorney had "initially performed some work on" the defendant's appeal. Thus, the defendant could have found that the lawyer would be able to quickly act on his case, and since the Disciplinary Committee concluded that the lawyer had neglected the defendant, not that he was incompetent, the defendant could have expected the proper level of legal services would finally be provided.

"The right to appeal a criminal conviction is fundamental and cannot be lost because the defendant was unaware of its existence or because counsel failed to keep a promise to file or prosecute an appeal" (*People v Melton*, 35 NY2d 327, 329 [1974], citing *People v Montgomery*, 24 NY2d 130, 132 [1969]). I would not deny the fundamental right to appellate review because the defendant, now facing a lifetime of incarceration, entrusted his future to counsel who failed him (*see generally Maples v Thomas*, 565 US —, —, 132 S Ct 912, 924 [2012] ["a client cannot be charged with the acts or omissions of an attorney who has abandoned him"]).

### III.

#### People v Dockery

In 1986, Alexander Dockery, then 15 years old and in the ninth grade, was charged with robbery in the first and second degrees (Penal Law §§ 160.15, 160.10). After a jury trial, the defendant was convicted of both counts and, now 16 years old, sentenced as a juvenile offender to an aggregate of 2 to 6 years' imprisonment in a youth facility. The sentencing minutes reflect

that defendant acknowledged receipt of the notice to appeal, and answered affirmatively when asked if his counsel advised him of his right to appeal.

In 1992, the defendant pleaded guilty to attempted criminal possession of a weapon in the third degree (Penal Law § 265.02). The defendant waived his right to appeal, but in adjudicating him a second violent felony offender the court inquired about the 1986 conviction. Defendant's assigned counsel requested time to review the file from 1986, and the prosecutor stated that the "[1986 case] would have been appealed by now." That, apparently, ended the discussion about the 1986 conviction.

In 2008, while incarcerated on another conviction, the defendant wrote a letter to the Appellate Division, First Department, requesting a copy of the notice of appeal filed in the 1986 case, a copy of the brief, and a copy of any other relevant documents. "Basically," the defendant wrote, "I would like to know what the [outcome] of the appeal was." The First Department responded by sending the defendant an in forma pauperis form. The defendant immediately filed an affidavit attesting to his indigency, and, apparently based on his own misunderstanding, stating incorrectly that he was represented by the Legal Aid Society in 1986.

The People opposed the defendant's motion to appeal as a poor person and cross-moved for dismissal. The Legal Aid Society was served a copy of the People's motion but filed no response. On December 30, 2008, the Appellate Division denied the defendant's motion and granted the People's motion to dismiss (2008 NY Slip Op 93213[U] [2008]).

In 2011, the defendant wrote to the Center for Appellate Litigation which then moved, on the defendant's behalf, for reinstatement of the appeal and assignment of counsel. The Appellate Division reinstated the appeal without prejudice to the People to move for dismissal (2011 NY Slip Op 93263[U] [2011]), which the People did and which the defendant opposed. In 2012 the Appellate Division again dismissed the appeal, without opinion (2012 NY Slip Op 76557[U] [2012]).

The defendant contends that the Appellate Division abused its discretion by dismissing his appeal on the grounds of inaction and speculative claims of prejudice to the People. The defendant further argues that he believed his lawyer would "handle things"—which the defendant argues was a reasonable way for a defendant who was 15 at the time of conviction and

16 at the time of sentencing, to view his situation and his attorney's role. He argues that minors should not be expected to understand and appreciate the appeals process and should have assistance of counsel in applying for poor person relief.

It is generally accepted and well established that young people and adults mature at different rates and that children simply do not have the capacity to fully appreciate the world and the consequences of their actions and choices. As the United States Supreme Court stated in 2011 in *J.D.B. v North Carolina*, "[t]he law has historically reflected the same assumption that children characteristically lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them" (564 US —, —, 131 S Ct 2394, 2397 [2011]). "Children 'generally are less mature and responsible than adults' . . . [and] 'often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them' " (*id.* at —, 131 S Ct at 2403 [citations omitted]). Moreover, children "are more vulnerable or susceptible to . . . outside pressures than adults" (*id.* at —, 131 S Ct at 2403 [internal quotation marks omitted], citing *Roper v Simmons*, 543 US 551, 569 [2005]; *see also Johnson v Texas*, 509 US 350, 367 [1993] ["A lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions"]). The inescapable conclusion is that children are unable to understand life's challenges or exercise judgment as would adults.

The defendant's argument that minors simply cannot be expected to make their own informed choices about conduct that may carry significant legal consequences is supported by data. Studies have established that juveniles are unable to fully understand and appreciate their legal rights (*see e.g. Graham v Florida*, 560 US 48, 68 [2010] ["developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds"]). The neuroscience research data confirms juveniles do not possess the maturity necessary to make decisions that, in the case of criminal convictions, carry lifelong consequences (*see e.g.* Nitin Gogtay et al., *Dynamic Mapping of Human Cortical Development During Childhood Through Early Adulthood*, Proc Natl Acad Sci, vol 101, No. 21 at 8177 [May 25, 2004], available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC419576/pdf/1018174.pdf; Linda Spear, The

Behavioral Neuroscience of Adolescence, 108-111 [2009]). The inescapable conclusion is that the inherent differences between young people and adults impact on a defendant minor's ability to appreciate and respond to the requirements of the appellate review process (*see e.g.* Laurence Steinberg et al., *Age Differences in Future Orientation and Delay Discounting*, Child Dev, vol 80, No. 1 at 30, 35-36 [Jan./Feb. 2009]).

A conviction and a criminal record can impose severe lifetime consequences before the child develops the capacity to appreciate fully the meaning of negative life choices (*see* Jari-Erik Nurmi, *How Do Adolescents See Their Future? A Review of the Development of Future Orientation and Planning*, 11 Developmental Rev 1, 28-29 [1991]). The collateral consequences that accompany a criminal conviction are far reaching and can include the loss of the right to vote; loss of public benefits; exclusion from public housing; deportation for noncitizens; exclusion from jury service; and loss or exclusion from public employment (*see generally* Legal Action Center, *After Prison: Roadblocks to Reentry, A Report on State Legal Barriers Facing People with Criminal Records* [2004], available at http://www.lac.org/roadblocks-to-reentry/upload/lacreport/LAC_PrintReport.pdf [accessed Mar. 20, 2013]). Moreover, a criminal record undermines efforts to redirect a youth in a positive, life-affirming direction (*see generally* Devah Pager, *The Mark of a Criminal Record*, Am J Soc, vol 108, No. 5 [Mar. 2003], available at https://www.princeton.edu/~pager/pager_ajs.pdf [accessed Mar. 21, 2014]). Given the potential impact on a young life, access to appellate review for this class of defendants is of critical importance. The stakes are simply too high to risk the future of a young person without at least considering how age may have affected the minor defendant's conduct.

We ignore what science and experience tells us at our own peril. As related to the specific issues involved in this case, there is simply no reason not to acknowledge the scientific reality of differences based on age in cases involving requests to extend the period of time to appeal. The United States Supreme Court's conclusion in the context of sentencing that "criminal procedure laws that fail to take defendants' youthfulness into account at all [are] flawed" (*Graham*, 560 US at 76), is no less true in cases involving minor children and their right to appellate review (*see People v Rudolph*, 21 NY3d 497, 506 [2013, Graffeo, J., concurring] ["Young people who find themselves in

the criminal courts are not comparable to adults in many respects—and our jurisprudence should reflect that fact"]).

Therefore, I would hold that before dismissing for failure to prosecute an appeal from a conviction imposed upon a minor defendant, the Appellate Division must consider the impact of the defendant's age in determining whether the delay in pursuing the appeal is inexcusable, and failure to do so is an abuse of discretion. Accordingly, I would vote to remit back to the Appellate Division for such consideration.

## IV.

I share the majority's concern that an extensive delay in the appellate process has an adverse impact on our criminal justice system. During any given year, the Appellate Division can hear and decide thousands of appeals. Indeed, our current legal system is plagued by many delays not attributable to defendants or the courts themselves, but due to the sheer volume of cases or other matters beyond the control of the People or the defendants.

Concern over the potential impact of untimely appeals on the criminal justice system, however, must not outweigh our responsibility to ensure the rights of defendants. For, as justice delayed lessens public confidence in our legal system, so do denials of rights to appellate review of defendants failed by their attorneys, and defendants whose youth impacts their ability to understand and appreciate the appellate process. I dissent.

Judges GRAFFEO, READ and PIGOTT concur with Judge SMITH; Judge RIVERA dissents in an opinion in which Chief Judge LIPPMAN concurs; Judge ABDUS-SALAAM taking no part.

In *People v Perez* and *People v Dockery*: Order affirmed.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, PIGOTT and RIVERA concur; Judge ABDUS-SALAAM taking no part.

In *People v Calaff*: Order affirmed.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, PIGOTT and RIVERA concur; Judge ABDUS-SALAAM taking no part.

In *People v Lopez*: Order reversed and case remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein.