This opinion is uncorrected and subject to revision before
publication in the New York Reports.
--------------------------------------------------------------------

No. 115
The People &c.,
                Respondent,
          v.
Mario Arjune,
                Appellant.

          Jenin Younes, for appellant.
          William H. Branigan, for respondent.
          National Association of Criminal Defense Lawyers, et
al., amici curiae.

STEIN, J.:

          In People v Syville (15 NY3d 391 [2010]), we held that,

in rare circumstances, a defendant may seek coram nobis relief

despite failing to move for an extension of time to file a notice

of appeal within the one-year grace period provided by CPL

460.30.  Specifically, we concluded that coram nobis may be

- 1 -

available for a defendant who demonstrated that he or she timely requested that trial counsel file a notice of appeal, the attorney failed to comply, and the omission could not reasonably have been discovered within the one-year time limit (see id. at 400-401).  Defendant now asks us to expand Syville to situations in which retained trial counsel filed a timely notice of appeal but allegedly failed to advise the defendant of his or her right to poor person relief, or to take any action when served with a motion to dismiss the appeal years after the notice of appeal was filed.  Because defendant has not met his burden of proving that counsel was ineffective, we decline to expand Syville under the circumstances presented here.

I.

Defendant, an English-speaking immigrant from Suriname, asserts that he is minimally literate and has cognitive limitations, which admittedly did not prevent him from maintaining employment in construction, managing independent living skills, taking his elderly mother to doctor appointments and ensuring that she took her medication, and helping his girlfriend's teenage child complete her homework.  Defendant immigrated to the United States in 2006.  In 2008, he was charged with attempted murder in the second degree, assault in the first degree, tampering with physical evidence, and possession of a weapon in the fourth degree.  The charges arose out of an incident in which defendant used a boxcutter to stab another man

in the chest, stomach and leg, and then hid the boxcutter --
which was covered in blood -- in a ceiling tile in the bathroom
of the restaurant where the stabbing took place.  Defendant
retained counsel, who asserted a justification defense at the
ensuing jury trial.  Counsel was able to obtain defendant's
acquittal on the attempted murder and first-degree assault
charges.  Defendant was convicted, however, of tampering with
physical evidence and criminal possession of a weapon in the
fourth degree.  He was sentenced to an aggregate term of 1 to 3
years in prison.

At sentencing, the court clerk stated, "[l]et the
record reflect the defendant is being handed a notice of appeal."
The People have provided us with the standard "Notice of
Defendant of His Right to Appeal" that is handed to all Queens
County defendants.[1]  Counsel filed a notice of appeal on
defendant's behalf the day after sentencing.

Defendant was released from prison in March 2010, four
months after being sentenced.  He did not retain an attorney,
move for poor person relief or attempt to obtain assistance in

---

[1] The form states: "You have a right to appeal to the
Appellate Division, Second Department, within thirty [30] days
and, in addition, upon proof of your financial inability to
retain counsel and to pay the cost and expenses of the appeal,
you have the right to apply to the Appellate Division, Second
Department, for the assignment of counsel and for leave to
prosecute the appeal as a poor person and to dispense with
printing.  The Appellate Division, Second Department, is located
at 45 Monroe Place, Brooklyn, New York 11201."

perfecting the appeal.  In October 2013, approximately four years after the notice of appeal was filed, the People moved in the Appellate Division to dismiss the appeal as abandoned.  As required by CPL 470.60, the People sent a copy of the motion to dismiss both to defendant at his last known residence and to counsel.  Neither defendant nor counsel responded, and the Appellate Division dismissed the appeal in December 2013.

One year later, in December 2014, defendant was remanded to the custody of Immigration and Customs Enforcement for deportation and was released on bond.  Defendant's immigration attorney referred him to an appellate indigent defense provider, who moved to reinstate defendant's appeal in April 2015.  Although the People filed a response taking no position on the motion, the Appellate Division denied it.[2]  In October 2015, nearly six years after the notice of appeal was filed, defendant moved for a writ of error coram nobis, claiming that he was denied the effective assistance of counsel in perfecting his appeal.

In connection with his coram nobis application, defendant submitted an affidavit in which he stated, without proof, that counsel did not speak with him during or after his trial about an appeal, about the fact that his conviction could

---

[2] The Appellate Division's denials of defendant's motion to reinstate and his subsequent motion for reconsideration are not before us, and we have no occasion to consider the merits thereof.

subject him to deportation, or about poor person relief.  He averred that he did not know that a notice of appeal was filed and that he would have pursued the appeal if he knew about the deportation consequences of his conviction and his right to an attorney.[3]  Trial counsel also submitted an affirmation in which he stated that he was retained to represent defendant at trial and filed a notice of appeal on defendant's behalf but, after he did so, he did not remember speaking to defendant about how to perfect the appeal.  Counsel indicated that he believed his representation, as retained trial counsel, ended after the filing of the notice of appeal because "[i]t was understood that [he] was trial and not appellate counsel."  Counsel also stated that he had no recollection of receiving the People's motion to dismiss the appeal.

The Appellate Division denied the coram nobis motion, without opinion (138 AD3d 877 [2d Dept 2016]), and a Judge of this Court granted defendant leave to appeal (27 NY3d 1148 [2016]).

II.

Despite trial counsel's having secured an acquittal on the charges of attempted murder and first-degree assault, as well as a sentence that resulted in defendant being released from prison four months after his trial ended, defendant now claims

---

[3] Although he now claims, without direct evidentiary support, that his parents paid counsel to represent him at trial, defendant indicated in his affidavit that he retained counsel.

that counsel was ineffective.  Defendant argues that, due to his purported cognitive limitations, he was ill-equipped to obtain poor person relief in connection with the process of appealing his conviction, to oppose the dismissal of his appeal or to perfect it without any guidance from an attorney.  Defendant and Judge Rivera, in dissent, cite the rules of all four Appellate Division Departments, which were in effect at the time of his conviction, requiring trial counsel to inform his or her client, in writing, of the right to appeal and provide basic information necessary to pursue the appeal, including the right to seek poor person relief and how to do so if the client is indigent (see 22 NYCRR 606.5 [b]; 671.3 [a]; 821.2 [a];  former 1022.11 [a]).  Defendant and Judge Rivera, in dissent, maintain that the existence of such directives -- as well as bar association standards mandating that counsel assist in procuring poor person relief and take steps to ensure that an appeal is not unwittingly forfeited -- establishes defendant's entitlement to a writ of error coram nobis based upon his unsupported claims that counsel failed to assist him in obtaining poor person relief or to respond to the People's motion to dismiss four years after the notice of appeal was filed.

This argument is undermined by this Court's holdings, in two cases, that defendants are not "constitutionally entitled to appointment of counsel to assist in preparing a poor person application" (People v Perez, 23 NY3d 89, 99 [2014]; see People v

West, 100 NY2d 23, 28 [2003], cert denied 540 US 1019 [2003]).

That is, we expressly rejected the argument that "an application

for poor person relief is a critical stage of the proceeding to

which [a defendant's] Sixth Amendment and due process rights to

counsel attach" (West, 100 NY2d at 28). Perez and West involved

review of Appellate Division dismissals of appeals for failure to

perfect. We explained that, while our "state's processes must

provide the criminal appellant with the minimal safeguards

necessary to make an adequate and effective appeal" (West, 100

NY2d at 28), "it is not unconstitutional to require a defendant

to take some minimal initiative to assure himself adequate

representation on appeal" (Perez, 23 NY3d at 100).[4] Notably, in

both West and Perez, the Court concluded that written notices

similar to the one provided to defendant at sentencing here

"[c]learly . . . informed [the defendants] of [their] right to

appeal and more specifically, how to apply for poor person

relief," and thus "belied" any claims that delays in perfecting

their appeal should not be counted against them (West, 100 NY2d

_____

[4] We reasoned that "the concerns underlying a due process
right to counsel on direct appeal are not present in the
mechanism by which an indigent defendant seeks poor person
relief. An appellant need only advise the appellate court of
income, its source(s), and a list of property owned and its
value. This personal information is uniquely available to the
appellant -- the assistance of counsel is not necessary to
uncover or develop it. Consequently, the need for careful
advocacy to ensure substantial legal and factual arguments are
not passed over is not implicated" (People v West, 100 NY2d 23,
28-29 [2003]).

at 27; see Perez, 23 NY3d at 99).

Given this legal backdrop -- i.e., the Court's holdings in West and Perez that a defendant is not constitutionally entitled to the assistance of counsel in seeking poor person relief as long as he or she is given written notice that is similar to the one defendant received here -- defendant has a heavy burden to demonstrate entitlement to a writ of error coram nobis premised on ineffective assistance of counsel for failing to assist in procuring poor person relief.  Although the dissenters fail to recognize the distinction, we emphasize that defendant does not challenge the dismissal of his appeal by the Appellate Division for failure to perfect, as in Perez and West; nor does this appeal involve the Appellate Division's resolution of a motion to extend the time to appeal under court rules (cf. People v Zanghi, 159 AD2d 1030 [1990]).  Rather, this appeal is from the denial of a coram nobis motion.  Therefore, defendant bore the burden of demonstrating that he was denied meaningful assistance -- that counsel's actions in allegedly failing to assist defendant in obtaining poor person relief were not "consistent with those of a reasonably competent . . . attorney" (People v Borrell, 12 NY3d 365, 368 [2009]).  He failed to meet that burden here, both in terms of his specific claim that counsel did not advise him of his right to seek poor person relief in connection with his appeal and the more general claim, advanced by both Judge Rivera and Judge Wilson in dissent, that

counsel did not consult with him regarding an appeal.

With respect to the other prong of defendant's coram nobis motion (based on failure to respond to the dismissal motion four years after the notice of appeal was filed) defendant and Judge Rivera, in her dissent, essentially seek a rule that trial counsel has a constitutional responsibility in connection with an appeal for an indefinite period of time extending for years after the notice of appeal is filed. Neither defendant nor that dissent cite any legal support for the imposition of such a rule. Moreover, the cases that defendant cites concerning ineffectiveness of counsel and entitlement to coram nobis relief -- including Syville -- do not support imposing either such an open-ended obligation on behalf of trial counsel or a rule that counsel is ineffective for failing to assist a defendant in obtaining poor person relief.

### III.

The federal rule on ineffectiveness of counsel when an attorney completely fails to file a notice of appeal was enunciated in Roe v Flores-Ortega (528 US 470 [2000]).[5] In that case, the Supreme Court declined to hold that a trial attorney's performance was deficient per se for failing to file a notice of appeal whenever a client did not clearly instruct otherwise (see id. at 478). The Court concluded that such a rule would

---

[5] Roe v Flores-Ortega (528 US 470 [2000]) is distinguishable because, here, counsel did file a notice of appeal. Nonetheless, Roe is instructive.

"effectively impose[] an obligation on counsel in all cases
either (1) to file a notice of appeal, or (2) to discuss the
possibility of an appeal with the defendant, ascertain his
wishes, and act accordingly" (id.).  The Court recognized that
filing a notice of appeal is a "purely ministerial task that
imposes no great burden on counsel" (id. at 474), and that
counsel's failure to file a notice when asked to do so works a
"forfeiture of a proceeding itself," depriving a defendant of "an
appeal altogether" (id. at 483).  Nevertheless, the Supreme Court
rejected a per se rule because holding "as a constitutional
matter, that in every case counsel's failure to consult with the
defendant about an appeal is necessarily unreasonable, and
therefore deficient[,] . . . would be inconsistent with both
. . . Strickland[6] and common sense" (id. at 479).  The Court
further explained that "detailed rules for counsel's conduct have
no place in a Strickland inquiry" -- i.e., in an ineffective
assistance of counsel inquiry under the federal standard (id. at
480 [internal quotation marks and citation omitted]).

          Thus, the Supreme Court held that -- although the
better practice is to routinely consult with a client -- an
attorney has a constitutional obligation to consult with a client
regarding taking an appeal only when "there is reason to think
either (1) that a rational defendant would want to appeal (for
example, because there are nonfrivolous grounds for appeal), or

_____

          [6] Strickland v Washington (466 US 668 [1984]).

(2) that this particular defendant reasonably demonstrated to
counsel that he was interested in appealing" (id. at 480).  The
Court expressly defined "consult" as "advising the defendant
about the advantages and disadvantages of taking an appeal and
making a reasonable effort to discover the defendant's wishes"
(id. at 478).  That definition must be read in the context of the
Court's hypothetical indicating that such consultation would not
be required when "a sentencing court's instructions to a
defendant about his appeal rights in a particular case are so
clear and informative as to substitute for counsel's duty to
consult[] [because,] [i]n some cases, counsel might then
reasonably decide that he need not repeat that information" (id.
at 479-480).[7]  The acknowledgment in Roe that the sentencing

---

[7] We note that Judge Rivera's conclusion that this statement
in Roe (528 US at 479-480) is misleading (Judge Rivera, dissent
op, at 16-17) is more properly directed at the United States
Supreme Court. The same is true for the dissent's conclusion
(Judge Rivera, dissent op, at 12-13) that the Roe Court
essentially contradicted Strickland when quoting it for the
proposition that "'[p]revailing norms of practice as reflected in
American Bar Association standards and the like . . . are only
guides,' and imposing 'specific guidelines' on counsel is 'not
appropriate.'  And, while States are free to impose whatever
specific rules they see fit to ensure that criminal defendants
are well represented, we have held that the Federal Constitution
imposes one general requirement: that counsel make objectively
reasonable choices" (Roe, 528 US at 479, quoting Strickland 466
US at 688).  That said, nothing in this decision should be read
to minimize the importance of these standards or state rules, to
prohibit the adoption of such rules either administratively or by
the Legislature, or to contradict our prior decision that a writ
of error coram nobis may lie when the violation of court rules
results in a complete deprivation of counsel on a People's appeal
(see People v Brun, 15 NY3d 875, 876-877 [2010]).  Rather, we

court may satisfy trial counsel's duty necessarily implies that the Court's definition of "consult" cannot logically be read to extend trial counsel's duty to consult with the defendant regarding the merits with a view toward deciding whether to perfect the appeal.  Nor does Roe address whether such consultation is required when, as here, a notice of appeal was filed.

Syville itself -- which relied on Roe -- is an expansion of CPL 460.30, which "permits the Appellate Division to excuse a defendant's failure to file a timely notice of appeal from a criminal conviction if the application is made within one year of the date the notice was due" (15 NY3d at 394).  This Court cited Roe for the propositions that: (1) "[w]hen defense counsel disregards a client's timely request to file a notice of appeal, the attorney acts in a manner that is professionally unreasonable" (id. at 397 [internal quotation marks and citation omitted]); and (2) "to establish a constitutional violation in this context, a defendant need not identify potentially meritorious issues that would be raised on appeal; the defendant need only demonstrate that, as a result of counsel's deficient performance, appellate rights were extinguished" (id. at 398). Our narrow holding in Syville was that "the coram nobis procedure

---

simply conclude that it cannot be said, "as a constitutional matter, that in every case counsel's failure to [comply with every aspect of such directives] is necessarily unreasonable, and therefore deficient" (Roe, 528 US at 479).

is available to afford further relief to defendants who did not move within the one-year grace period because they were unaware during that year that their attorneys had not complied with their requests to file notices of appeal" (id.).

Syville was grounded in the principle that "[t]he Due Process Clause prohibits a defendant from being denied the right to appeal as a consequence of the violation of another constitutional right -- the right to the effective assistance of counsel on direct appeal" (id. at 398).  Thus, we recognized that a limited exception to the one-year time limit imposed in CPL 460.30 was necessary when counsel failed to comply with a request to file a notice of appeal.  We noted, however, that "it will be the rare case where this exception must be utilized," explaining that, "in most cases strict enforcement of the CPL 460.30 time limit is constitutionally permissible because attorneys usually accede to their clients' requests to file notices of appeal and, when they fail to do so, most defendants are in a position to discover the omission within the statutory grace period" (id. at 400 n 2 [emphasis added]).

Subsequently, in People v Andrews (23 NY3d 605 [2014]), we reiterated that "the holding of Syville -- that coram nobis may be used to assert a claim that appellate rights were extinguished by ineffective legal assistance -- was a narrow one," noting that "[o]nly defendants who 'could not reasonably have . . . discovered' the omission during that period are

entitled to utilize the coram nobis procedure" (id. at 614,
quoting Syville, 15 NY3d at 399, 400 n 2 [emphasis added]).  We
further emphasized that the burden is on the defendant seeking
coram nobis relief, stating that "Syville conditions coram nobis
relief on a defendant's ability to demonstrate that appellate
rights were lost as a result of ineffective assistance" (Andrews,
23 NY3d at 615).[8]  Thus, "perfunctory claims" that a defendant
requested his or her lawyer file a notice of appeal or that the
defendant was unable to discover counsel's failure to file a
notice are insufficient, particularly where, as in the case
currently before us, the sentencing "court's usual practice [was]
to provide defendants with written notice of the right to appeal"
(id. at 615-616).

        Finally, in People v Rosario (26 NY3d 597 [2015]), the
Court answered a question expressly left open in Syville, holding
that "[i]n order to obtain exceptional relief beyond the time
permitted under CPL 460.30, a defendant must show that he
exercised due diligence" (id. at 604).  We noted in Rosario that
the defendants (like defendant here) "claim[ed] that counsel did
not advise them of the right to appeal and had [they] known about

---

[8] The fundamental flaw in both dissenters' reasoning is that
they fail to recognize that defendant bore the burden here; they
simply accept all facts alleged by defendant as true and afford
him every possible favorable inference as if we were considering
a motion to dismiss a civil complaint (see Leon v Martinez, 84
NY2d 83, 87 [1994]), as opposed to an application for a writ of
error coram nobis (see People v Andrews, 23 NY3d 605, 615-616
[2014]).

their right to appeal, they would have requested one.  However, in both appeals, the only evidence proffered in support of the contention that [the] defendants were not apprised of their appellate rights [was] self-serving affidavits" (id. at 603). Moreover, the Rosario defendants failed to "make any showing that they took steps toward discovering the omission or explain why years passed before they sought coram nobis relief" (id. at 604). In other words, Rosario establishes that it is not sufficient for purposes of showing due diligence for a defendant merely to make an unsupported claim that he or she never knew of the right to appeal; nor are the People required to rebut such unsubstantiated allegations.

        The Court also determined in that case that the records, taken as a whole, demonstrated that the defendants were aware of their right to appeal, noting that "[b]oth the oral and written waivers in these cases are contrary to defendants' claims that they were unaware of their right to appeal" (id. at 604). In so determining, the Court rejected the position of the dissenters in Rosario, who would have reversed on the ground that a defendant is entitled to coram nobis relief under Roe when the record does not demonstrate that counsel consulted with defendant about the appeal, including giving the attorney's "professional judgment on the merits of an appeal" (id. at 605).  Thus, the Rosario majority also implicitly rejected any notion that a defendant's unsupported affidavit is sufficient to establish

entitlement to coram nobis relief whenever the record does not otherwise clearly demonstrate that trial counsel consulted with defendant on the merits of an appeal.

IV.

Here, apart from his affidavit stating that he did not recall receiving anything in writing about taking an appeal or discussing an appeal with counsel, defendant submitted no nonhearsay proof regarding whether he was made aware of his right to appeal or whether his attorney discussed the taking of an appeal with him prior to filing the notice of appeal. Indeed, defendant never even denied that the form handed to him at sentencing -- while counsel presumably stood next to him -- was the standard form handed to every defendant. He averred only that he did "not remember getting anything in writing about an appeal." Nor did defendant establish that he was unable to understand the form, including its instruction on how to obtain poor person relief, particularly given the fact that he was previously capable of retaining trial counsel.

Further, even if the receipt of the standard form was not sufficient under Perez and West, defendant failed to meet his burden of demonstrating that he was unaware of his appellate rights, how to seek poor person relief, or how to otherwise perfect the appeal, or that counsel failed to comply with the relevant court rules. Trial counsel's carefully worded affirmation does not support defendant's claims that he never

discussed appealing, did not consult with defendant after sentencing, or failed to inform defendant that he would need either a different lawyer for an appeal or to apply for poor person relief; counsel's affirmation indicates merely that, "after filing the notice of appeal," counsel had no contact with defendant or his family.  The affirmation did not outline counsel's standard practice -- presumably in an attempt to distinguish Andrews (see 23 NY3d at 615) and Rosario (26 NY3d at 604) -- or address whether he consulted with defendant before filing the notice of appeal.  Defendant has made no effort to present evidence of what conversations, if any, took place during this gap beyond a statement that, "[a]s far as [he] remember[ed], [counsel] did not talk to [him] about an appeal during or after [his] trial."

Defendant did submit an affirmation from his immigration attorney about his lack of understanding of his right to appeal.  However, that affirmation consists largely of hearsay, which parrots the claims asserted in defendant's own affidavit, and therefore also fails to satisfy defendant's burden on this coram nobis application.  The affirmation of his current attorney -- which recounts a conversation that she had with defendant's mother in which the mother allegedly stated that she and her husband paid defense counsel to represent defendant and that she did not remember defense counsel mentioning an appeal -- similarly reflects a lack of first-hand knowledge of the relevant

facts.  Notably, while both of defendant's parents submitted their own sworn affidavits recounting defendant's background, neither parent was willing to swear that trial counsel failed to discuss an appeal with them or to inform them that he was not acting as appellate counsel.  In any event, current counsel's claim is contradicted by defendant's own affidavit stating that he "paid [counsel] to represent [him] at [his] trial."

Thus, as in Rosario, we are asked to expand Syville to hold that a defendant is entitled to coram nobis relief based on an otherwise unsupported affidavit claiming that counsel did not consult with the defendant regarding an appeal and, had counsel done so, the defendant would have appealed.  Indeed, although we rejected such an expansion of Syville in Rosario, we are now asked to go even further and hold that such unsubstantiated claims entitle a defendant to coram nobis relief, not only when a notice of appeal is not filed, but also when trial counsel files a notice of appeal, but allegedly fails to assist a defendant in applying for poor person relief -- a stage of the proceedings in which we have held that counsel is not required to assist a defendant when he or she has received instructions on how to do so (see Perez, 23 NY3d at 99; West, 100 NY2d at 28) -- or to respond to a motion to dismiss years after filing a notice of appeal.  Such a holding would represent a significant expansion of Syville, a case that, as we have repeatedly emphasized, recognized only a narrow exception to the one-year deadline

imposed by CPL 460.30 for filing a notice of appeal that is, itself, to be used rarely.

Moreover, defendant has not shown that it was impossible to discover the alleged omission with reasonable diligence, even in spite of his alleged cognitive limitations. In Rosario, even where the defendants claimed that they were never aware of the right to appeal -- as defendant claims here -- they were nonetheless required to demonstrate what steps they took to discover the omission and explain why they waited years to obtain coram nobis relief (see Rosario, 26 NY3d at 603-604). Here, defendant has not even attempted to make such a showing, apart from his unsupported claim that he was not aware of his right to appeal. In fact, the record suggests that the reason defendant waited years to pursue further relief was that he was not interested in appealing his conviction and relatively short sentence until his status as a convicted felon led to further consequences. That is, "[t]he facts permit an inference that th[is] defendant[] did not simply neglect [his] appellate rights, but consciously chose not to exercise them until [he] acquired a reason to do so" (Perez, 23 NY3d at 101).

In light of the foregoing, we decline defendant's invitation to expand Syville and, instead, hold that coram nobis is unavailable under the circumstances presented here. Beyond some evidence of his cognitive limitations, defendant has provided only an unsupported affidavit indicating merely that he

was unaware of the right to appeal, and he has failed to show due diligence as required by Rosario.  He has, therefore, failed to "demonstrate that appellate rights were lost as a result of ineffective assistance" (Andrews, 23 NY3d at 615).  Inasmuch as defendant's papers were insufficient on their face to meet his burden on this coram nobis application, the Appellate Division was within its authority to so hold.  Accordingly, the order of the Appellate Division should be affirmed.

People v Mario Arjune

No. 115

RIVERA, J.(dissenting):

A lawyer failed to live up to prevailing professional standards, depriving his client of the fundamental right to appeal. In so doing, he violated the United States Supreme Court's holding from Roe v Flores-Ortega (528 US 470 [2000]), under which lawyers must make objectively reasonable choices about pursuing appeals on their clients' behalf. The majority today nevertheless holds that counsel was not ineffective, a decision that runs afoul of United States Supreme Court precedent and state jurisprudence, and deprives defendant of fundamental due process rights.

The facts of this case are stark. After completing the "purely ministerial task" (id., 528 US at 477) of filing a one-page notice of appeal on defendant's behalf, counsel had no contact with defendant or his family. Counsel failed to comply with the Appellate Division Department's own rules, which dictate that counsel must advise a defendant in writing of the right to apply for poor person relief if indigent and submit the application on defendant's behalf if defendant so requests. The record demonstrates that counsel's representation falls below applicable professional standards adopted by the American Bar

- 1 -

Association, New York State Bar Association, and National Legal
Aid and Defender Association.  As a consequence of counsel's
failures, the Appellate Division dismissed defendant's appeal for
failure to timely perfect, and thereafter denied his motions to
reinstate as well as the instant petition for a writ of error
coram nobis.  Notwithstanding these facts, the majority concludes
that counsel was not ineffective and that defendant is to blame
for his own dire situation.  I cannot agree.  As we have made
clear, "there is no justification for making the defendant suffer
for his attorney's failing" (People v Montgomery, 24 NY2d 130,
132 [1969]).  Under well established statutory and case law,
Appellate Division rules, and prevailing professional standards
applicable then and now, counsel could not desert his client.
Defendant's coram nobis petition should be granted and his appeal
reinstated.  Therefore, I dissent.


                                I.

        Defendant was a 22-year-old construction worker with no
criminal history when he was arrested on charges arising from a
fight at a local restaurant, where he had stopped for dinner
after work.  Defendant maintained that he acted in self defense
when a group of seven men surrounded and attacked him, and that
he fought back after one of the men tried to cut him.  After
using a knife to defend himself, defendant felt frightened and
impulsively hid it in the restaurant before waiting for the

police to arrive.  A jury acquitted defendant of attempted murder
and assault, but convicted him of fourth-degree criminal weapon
possession and tampering with evidence.

At the sentencing hearing, neither the judge nor
defendant's retained counsel mentioned defendant's appellate
rights.  In rebutting defendant's assertions that he never
received notice of an appeal nor information about his rights,
the People offered only a court clerk's statement from the close
of the proceeding: "Let the record reflect the defendant is being
handed a notice of appeal.  Paperwork to follow."  The record
before us does not contain this notice, only a document the
People assert is the standard notice given to all Queens County
defendants.

The day after sentencing, counsel filed a notice of
appeal.  Counsel admits he took no further steps to perfect the
appeal and that he has no recollection of any post-sentencing
contact with defendant or defendant's family.  As he explained,
"in [his] view, as retained counsel, [his] representation of
[defendant] ended with the trial, sentencing and filing of the
notice of appeal."  According to counsel, "[i]t was understood
that [he] was trial and not appellate counsel."

After defendant's release from prison, he was placed in
deportation proceedings based on his conviction.[1]  The appellate

---

[1]  Since defendant is a Lawful Permanent Resident, his
conviction constitutes the sole ground for separating him from
his family and removing him from this country.

indigent defense counsel representing defendant in the immigration proceeding learned that, approximately four years earlier, the Appellate Division had granted the People's unopposed motion to dismiss defendant's appeal for failure to timely perfect.

Appellate counsel moved to reinstate the appeal. The supporting affidavit from defendant averred that defendant was unaware of his appellate rights and believed the case finished when he was released from prison. It stated that defendant did not remember receiving any notice of appeal, and that if he had known he could obtain a public defender he would have requested one to pursue his appeal. In appellate counsel's own affirmation, she described a conversation with defendant's mother in which the mother stated that she and her husband had paid for trial defense counsel but exhausted their finances and could not afford an attorney for an appeal. The mother also did not remember counsel mentioning an appeal, and, consequently, she too believed the conviction was "the end."

Appellate counsel also submitted a psychologist's evaluation in which an expert concluded that defendant has severe cognitive limitations. The expert explained that defendant's verbal intellectual functioning is in the "Extremely Low" range, his nonverbal cognitive functioning in the "Borderline" range, and that defendant has low, if any, literacy. The expert remarked that defendant's impulsive actions in the underlying

incident -- hiding the weapon while waiting for police -- "would be consistent with a concrete and simplistic thinking style."[2]

The People took no position on the motion to reinstate the appeal. Nevertheless, the Appellate Division denied it. Appellate counsel then made a motion to reconsider "in light of the substantial rights at stake in this case," noting that "[defendant] will be deported as a result of a conviction that he has been unable to appeal through no fault of his own." The People opposed defendant's motion to reconsider on the basis that defendant had "failed to meet his burden of showing that the Court misapplied relevant law or overlooked relevant facts."[3] Again, the Appellate Division denied the motion.

Appellate counsel subsequently filed a petition for a writ of error coram nobis in the Appellate Division, alleging defense counsel was ineffective for failing to protect defendant's appellate rights. Counsel argued that defendant had a fifth-grade education and cognitive limitations, that trial

---

[2] The People never refute that defendant has cognitive limitations, as the majority implies when referring to them as "purported" limitations (majority op at 5). Moreover, it is unclear what the majority would hold sufficient evidence of such a disability for a writ of error coram nobis, if not an uncontradicted expert opinion (see majority op at 19).

[3] The People did not go so far as to make conclusions on the merits of defendant's motion, as the majority here does. Indeed, the People included a footnote in their affirmation in opposition to defendant's motion to reargue stating "[a]s before, the People take no position on defendant's argument on the merits of the motion that defendant seeks to reargue."

counsel had done nothing after filing the notice of appeal, and
that defendant's constitutional rights were violated as a result
of trial counsel's failure to take basic steps to ensure
defendant was able to perfect his appeal.  The Appellate Division
denied the petition without opinion (People v Arjune, 138 AD3d
877 [2d Dept 2016]).


                              II.

        The right to appeal is a fundamental right (Montgomery,
24 NY2d at 132).  Under New York law, every defendant has a
statutory right to a first-tier appeal (People v West, 100 NY2d
23 [2003]).  It is the state's responsibility to "make that
appeal more than a meaningless ritual" (Evitts v Lucey, 469 US
387, 394 [1985]) "by affording a right to counsel on appeal"
(People v Syville, 15 NY3d 391, 397 [2010], citing Evitts, 469 US
at 394).  As this Court explained in People v Syville, "[i]t
follows that '[a] first appeal as of right . . . is not
adjudicated in accord with due process of law if the appellant
does not have the effective assistance of an attorney'" (Syville,
15 NY3d at 397, quoting Evitts, 469 US at 396).  Thus, it also
follows that where counsel's failures have deprived a defendant
of this right to appeal under the normal procedural course,
defendant may seek reinstatement of the appeal by writ of error
coram nobis.

III.

Counsel's representation is measured against governing constitutional doctrine, statutory mandates, and basic rules of criminal practice, all of which aim to protect the client's appellate rights.  Where, as here, counsel's representation is deficient for failing to comply with these authorities, counsel must be deemed ineffective.

A.

In Roe v Flores-Ortega, the United States Supreme Court stated that where defendant claims counsel was ineffective for failing to file a notice of appeal, courts must determine "whether counsel in fact consulted with the defendant about an appeal" (528 US 470, 478 [2000]).  The Court further expounded that "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes" (id.).  If counsel has failed to consult with a client, courts must ask whether such failure "itself constitutes deficient performance" (id.).

The Court rejected a bright line rule that counsel must always consult with defendant regarding an appeal, instead holding that the federal constitution mandates counsel make objectively reasonable choices, which must be assessed on a case-by-case basis.  Yet, as the Court unanimously held, only in rare cases would counsel be effective absent client consultation.  According to the Roe majority, "[c]ourts evaluating the

reasonableness of counsel's performance . . . will find, in the vast majority of cases that counsel had a duty to consult with the defendant about an appeal" (id. at 481), and the four concurring justices stated counsel "almost always" has this duty (id. at 488 [Breyer, J., concurring]; id. at 488 [Souter, J., concurring in part and dissenting in part, joined by Ginsberg, J., and Stevens, J.]).

Further, as stated by the Court, apart from the federal constitution's mandates, "[s]tates are free to impose whatever specific rules they see fit to ensure that criminal defendants are well represented" (id. at 479).  New York has imposed just such rules.  If defense counsel ignores them, and defendant is thereby foreclosed from pursuing a direct appeal as of right, counsel has not complied with either the federal "objectively reasonable" or New York's less-stringent meaningful representation requirement.[4]

---

[4] See People v Honghirun, 29 NY3d 284, 289 (2017) ("The difference between the federal and state standards is that '[o]ur state standard . . . offers greater protection than the federal test' because, 'under our State Constitution, even in the absence of a reasonable probability of a different outcome, inadequacy of counsel will still warrant reversal whenever a defendant is deprived of a fair trial'"), quoting People v Caban, 5 NY3d 143, 155-156 [2005]; People v Stultz, 2 NY3d 277, 283-84 (2004) ("From time to time, we have referred to the Strickland standard and measured counsel's performance under it, but we have never applied it with such stringency as to require a defendant to show that, but for counsel's ineffectiveness, the outcome would probably have been different."); People v Benevento, 91 NY2d 708, 714 (1998) (New York's claim of ineffectiveness is "ultimately concerned with the fairness of the process as a whole rather than its particular impact on the outcome of the case."); People v

B.

New York's four Appellate Division Departments have longstanding rules that "it shall be the duty of the counsel for the defendant, immediately after the pronouncement of sentence," to advise defendant in writing of the right to appeal, the time limitations involved, how to institute an appeal and obtain a transcript of trial testimony, and of the right to poor person relief (22 NYCRR 671.3[A]; West, 100 NY2d at 26 ["the Appellate Divisions in 1964 promulgated rules that require assigned or retained counsel 'immediately after the pronouncement of sentence' to advise a defendant in writing of the right to appeal and the time limitations involved"] [citations omitted]).

The Second Department, the court that denied defendant coram nobis relief, requires "written notice to [the] client advising [the client] of the right to appeal," which shall "also set forth . . . the appellant's right upon proof of [the client's] financial inability" to apply for "the following relief": "the assignment of counsel," "leave to prosecute the appeal as a poor person and to dispense with printing," and a copy of the trial transcript without charge" (22 NYCRR 671.3 [b] [3]).  In addition, "counsel shall also request the written instructions of [the] client," and upon written notice of a desire to appeal or to apply for poor person relief, "counsel

_____

Baldi, 54 NY2d 137 (1981).

shall proceed promptly to do so" (22 NYCRR 671.3 [b] [4]).  The

Second Department is not alone in requiring that counsel ensure a

client's indigency is no barrier to pursuing an appeal.  The

Fourth Department also mandates that counsel submit the

application for poor person relief upon the client's request (22

NYCRR 1015.7 [A]).[5]

  The majority ignores the significance of counsel's

violation of these rules, minimizing the Division Department

standards as a basis for measuring the quality of counsel's

representation.  Rather than deny that the conduct here is

deficient, we should recognize that defendant has been denied

meaningful representation as a direct result of counsel's

inaction.  Apart from the injustice suffered by defendant, the

holding here risks disincentivizing compliance with the rules.

Instead, we should be conveying their centrality to criminal

legal practice.

C.

  In addition to considering rules promulgated by the

states, the Supreme Court looks to "the legal profession's

maintenance of standards sufficient to justify the law's

presumption that counsel will fulfill the role in the adversary

---

[5] The other Appellate Division Departments are even more
protective: counsel's duty to file the notice of appeal is not
conditioned on a written request (see 22 NYCRR 606.5 [First
Department]; 821.2 [Third Department]; 1015.7 [Fourth
Department]).

process that the [Sixth] Amendment envisions," since the Amendment "refers simply to 'counsel,' [without] specifying [the] particular requirements of effective assistance" (Strickland v Washington, 466 US 668, 688 [1984]).  Promoted by the bodies charged with supervising the practice of law, professional standards seek to lessen the institutional and structural obstacles that prevent defendants who want to appeal their criminal convictions from doing so.  As relevant here, these standards address a "representation gap" between when the notice of appeal is filed and when the appeal is perfected.  As the ABA commentary explains, "[t]his is a critical stage in a criminal prosecution, and no defendant should lack legal counsel during this period" (ABA Standards for Criminal Justice, Standard 21-2.2 [a]).  Furthermore, "[the ABA] standard, in stressing the continuing responsibility of the trial attorney, seeks to avoid the problem of a hiatus in legal representation during a critical period" (id.).

        The relevant New York State Bar Association standards state that "representation at the trial court stage means, at a minimum," not only "advising the client of the right to seek appointment of counsel and a free copy of the transcript" but also "applying for appointment of counsel and a free copy of the transcript if the client requests" (NY St. Bar Assn, Revised Standards for Providing Mandated Representation, I-7 [j] [iv] [2015]).  The National Legal Aid and Defender Association

similarly instructs trial counsel to "inform the defendant of [the] right to appeal," and "the action that must be taken to perfect an appeal" (Performance Guidelines for Criminal Defense Representation, Guideline 9.2 [ab] [2011]).  If the defendant wants to file an appeal but is unable to do so without the assistance of counsel, the attorney should file the notice and "take such other steps as are necessary to preserve the defendant's right to appeal" (id.).

The American Bar Association makes clear that counsel cannot simply walk away from a client.  Its standards specify that trial counsel should explain the "meaning and consequences of the court's judgment and defendant's right of appeal," and "take whatever steps are necessary to protect the defendant's right to appeal" (ABA Defense Function 4-8.2 [b] [1993]). Counsel must also "continue to represent a sentenced defendant until a decision has been made whether to appeal and, if an appeal is instituted, to serve the defendant at least until new counsel is substituted," unless the court allows counsel to withdraw (ABA Standards for Criminal Justice, Criminal Appeals, Transition from Trial Court to Appellate Court, Standard 21-2.2 [a] [1978]).

The majority cites to Roe for the proposition that professional standards are mere guides that the Supreme Court meant to have limited relevance when analyzing whether defense counsel was ineffective (majority op at 11 n 5).  This

interpretation of <u>Roe</u> is incorrect.  The Supreme Court's

reference to the ABA standards in that case as guides must be

understood in context.  While the Court did not render its

holding based on ABA standards, it went on to conclude that it

would be the rare case in which counsel's constitutional duty

could be met absent compliance with those very same standards.

The majority's misplaced focus on "guides" also takes

that word out of context in light of other Supreme Court

precedent.  The Supreme Court has continuously treated

professional standards as essential to the Court's effective

assistance analysis.  In <u>Strickland</u>, the Court held that "[t]he

proper measure of attorney performance remains simply

reasonableness under prevailing professional norms" (466 US at

688 [internal citation omitted]).  In <u>Padilla v Kentucky</u>, the

Supreme Court held that "[t]he first prong [of an ineffective

assistance of counsel analysis] -- constitutional deficiency --

is necessarily linked to the legal community's practice and

expectations" (55 US 356, 366 [2010]).  Citing rules promulgated

by the National Legal Aid and Defender Association, the

Department of Justice, and the American Bar Association, the

Court held:

> "These standards may be valuable measures of the
> prevailing professional norms of effective
> representation, especially as these standards have been
> adapted to deal with the intersection of modern
> criminal prosecutions and immigration law.  The weight
> of prevailing professional norms supports the view that
> counsel must advise her client regarding the risk of
> deportation" (<u>Padilla</u>, 559 US at 367-368; <u>see</u> <u>also</u>

> Chaidez v United States, 568 US 342, 352 [2013] ["a
> court begins by evaluating the reasonableness of an
> attorney's conduct in light of professional norms"]).

In New York, we similarly ask whether "attorney's conduct
f[a]ll[s] below established professional norms" (Baret, 23 NY3d
777, 783 [2015]).  Thus, when evaluating an attorney's
representation, professional norms are at the center of the
analysis.  Roe is not to the contrary, as the majority implies,
nor establishes that counsel here was other than ineffective.


                            IV.

        In the case before us, counsel was ineffective and
failed to provide meaningful representation to defendant,
resulting in the loss of defendant's only appeal as of right.
His representation fell below the federal standard discussed in
Roe, as he did not make "objectively reasonable choices" related
to defendant's appellate rights (Roe, 528 US at 479).  Counsel
failed to consult with defendant after sentencing about the right
to appeal, and certainly did not "mak[e] a reasonable effort to
discover the defendant's wishes" (id. at 478), since he had no
contact with defendant or his family.

        Counsel also violated his state-based duty when he
broke the relevant Division Department rules.  We have held that
lack of compliance with Department rules that deprives a
defendant of appellate counsel constitutes per se ineffective
assistance of trial counsel (see People v Brun, 15 NY3d 875

[2010] [defendant entitled to coram nobis relief where trial counsel failed to comply with Second Department's rule, thereby denying defendant representation upon People's appeal]; see also People v Zanghi, 159 AD2d 1030 [4th Dept 1990] [holding that, where a defendant claimed lack of oral consultation with counsel regarding right to appeal, the court "need not determine the truth of defendant's allegations because counsel failed to comply with our rule (22 NYCRR) 1022.11 (a)" to inform defendants of appellate rights in writing: "we remind counsel of the obligation under that rule"]).

The People imply that counsel may have consulted with defendant before sentencing, and the majority claims that counsel's "carefully worded" affirmation should be read as confirmation that there was consultation (majority op at 15). The affirmation, however, is revealing more for what it omits than for what it includes, and does not support an inference of effective representation. This "carefully worded" document says nothing about whether counsel's usual practice includes informing defendants about their right to appeal or how to request appellate indigent representation. While the People's motion to dismiss defendant's appeal and the court's order granting that motion were both sent to counsel's business address, counsel states he has no recollection of receiving the motion to dismiss the appeal and "carefully" makes no mention of whether he received the order. It is clear that he did not respond to

either, nor even took action to inform defendant or confirm that
defendant had chosen not to pursue an appeal.[6]

Additionally, the majority argues that a sentencing
court's instructions may be "so clear and informative as to
substitute for a counsel's duty to consult," and in some cases
"counsel might then reasonably decide that he need not repeat
that information" (majority op at 10, citing Roe, 528 US at
479-480).  Nevertheless, the burden is on counsel, not the court,
to ensure that defendant thoroughly understands the right to
appeal and how to pursue it.  While counsel may account for
court-given information when analyzing what additional
instruction defendants need, the responsibility of getting a
defendant to that crucial state of understanding remains at all
times with the lawyer.  After all, unlike the court, counsel has

---

[6] The majority asserts that I have ignored that defendant
bears a heavy burden to establish counsel denied him meaningful
assistance  (majority op at 8).  Notwithstanding the majority's
claim, it is obvious from my references to the applicable legal
mandates, and to the defendant's submissions in support of his
petition for coram nobis relief, that my disagreement is not a
difference of opinion as to the burden of production or proof.
My disagreement is what to make of the record before us.  Unlike
the majority I do not consider defendant's claims "perfunctory"
(majority op at 14).  Defendant does not rely solely on his own
unsupported statements that his attorney failed him.  Instead, he
establishes by his counsel's own admissions that counsel did
nothing other than file a notice of appeal and that he did not do
more because he was not appellate counsel.  Moreover, counsel has
never asserted that he fulfilled his duties under the Appellate
Division rules.  This is powerful evidence in support of
defendant's petition.  If counsel's admission of his own failures
is not enough, then no defendant, with or without cognitive
limitations, can meet the standard adopted by the majority.

the ability to discuss candidly defendant's options regarding an appeal.

"There is no substitute for the single-minded advocacy of appellate counsel" (People v Emmett, 25 NY2d 354, 356 [1969] [holding unacceptable an appellate tribunal reviewing a case without waiting for defense counsel to "make his own appraisal of that record or to submit a brief"]).  Courts and defense counsel have different roles and relationships with defendants.  While courts purport neutrality, defense counsel's purpose is to advocate, a task that encompasses a wide array of responsibilities with the duty of loyalty at their core.  Neither instructions from the court nor a standard form could supplant the trust and dependence inherent in such a relationship.

Here, the court did not discuss the right to appeal with defendant, and thus there was no information for counsel to build upon when ensuring defendant thoroughly understood his rights.  The People and the majority rely on the form provided by the court clerk at the end of sentencing, but that document is not in the record and thus we cannot confirm its contents.  Assuming the People's submission to this Court represents the form handed to defendant at the end of the original sentencing proceeding, it was wholly inadequate to advise him of his right to appeal.

For instructions regarding appeals and poor person relief, our case law has recognized the utility of notices --

oral or written -- providing clear, robust guidance, along with

"ample notice" of rights (West, 100 NY2d at 28).  In West, where

we upheld a form as providing adequate notice, the form

instructed defendants to write to the Appellate Division

requesting assigned counsel and described what a defendant must

include in that letter.  The notice given to defendants in West

states:

> "If you are without funds, after the notice of appeal
> has been filed, you must write to the Appellate
> Division requesting that counsel be assigned to you for
> the purpose of appeal.  Send this letter to the
> Appellate Division, First Department, 27 Madison
> Avenue, New York, New York 10010. . . [R]equest that
> you be granted permission to appeal upon the original
> record.  You should mention you are without funds with
> which to retain counsel or to purchase a transcript of
> the proceedings.  State fully your financial
> circumstances, explaining why you cannot afford to hire
> an attorney for an appeal or purchase a transcript of
> the proceedings.  You must write this letter yourself"
> (id. at 28).[7]

In contrast, the standard notice the People rely on here lacks

the clarity of the notice cited in West. The form simply states:

> "You have a right to appeal to the Appellate Division,
> Second Department, within thirty (30) days and, in
> addition, upon proof of your financial inability to
> retain counsel and to pay the cost and expenses of the
> appeal, you have the right to apply to the Appellate
> Division, Second Department, for the assignment of

---

[7]  Notwithstanding the court's approval of the notice in
West, reliance on that notice to educate defendants on their
appellate rights may place such a burden on the exercise of those
rights as to be unconstitutional.  Such would be the case here,
as a written notice handed over at sentencing without counsel's
guidance would be of little use to defendant who is barely
literate.

> counsel and for leave to prosecute the appeal as a poor
> person and to dispense with printing.
> The Appellate Division, Second Department, is located
> at 25 Monroe place, Brooklyn, New York 11201."

This notice neither informs defendant of how to establish proof
of financial inability nor how to retain counsel or obtain a
transcript utilizing poor person relief.


                                V.

         It is noteworthy that the National Association of
Criminal Defense Lawyers (NACDL), the nationwide professional bar
association for public defenders and private criminal defense
lawyers, submitted a brief in this case advocating for a rule by
which "a lawyer who will not perfect the appeal. . . must advise
[the] client about how to obtain appellate counsel to do so and
assist [the] client in preparing the necessary papers" (NACDL
amic at 22).  As the NACDL argues, "[t]o do otherwise presents an
egregious risk to criminal defendants' fundamental right to
counsel in their appeals as of right and undermines exactly what
the ABA Standards are designed to prevent -- 'a hiatus in legal
representation during a critical period'" (id. [citation
omitted]).  Such a rule would provide "criminal defense
attorneys, prosecutors, and judges with a precise guidepost to
determine the point at which the duties of counsel end" (id. at
24-25) and would place a "minimal burden on criminal defense
attorneys," since "[for lawyers] experienced with the criminal

justice system, providing advice about these subjects and preparing the necessary papers is easily and quickly accomplished" (id. at 23).

On the other hand, the approach adopted by the majority today:

> "place[s] an immense burden on defendants, especially uneducated, non-English-speaking defendants, who must (i) come to understand the right to appellate counsel, (ii) then understand that to receive appellate counsel requires papers demonstrating one's indigence and requesting the appointment of counsel, and (iii) then prepare such papers despite potential deficiencies in language and legal knowledge" (id. at 23-24).

Defendant's case evidences this point, and highlights the vulnerability of many who find themselves in such a position. Defendant was a novice to the criminal justice system: this was his first and remains his only criminal offense. In addition, he has a fifth-grade education, a cognitive impairment, and is barely literate.[8]

Unsurprisingly, other jurisdictions, both state and federal, have instituted protections similar to those of the ABA. "[M]ost of the [federal] courts of appeals require counsel who represented a defendant at trial to continue representation after the defendant is convicted, unless relieved by order of the court

---

[8] The Court has previously noted that those familiar with the system are less well placed to claim ignorance of the rules and procedures than those who have never navigated its intricacies (West, 100 NY2d at 27 [in which "(w)hile doing nothing in state court to pursue his appeal, defendant repeatedly attempted to bypass the state appellate process by filing petitions seeking federal habeas corpus relief"]).

of appeals" (L. Griffin, 1 Federal Criminal Appeals § 1:18 [Mar 2017]).[9]  A rule that ensures seamless representation from conviction to resolution of defendant's first-tier appeal as of right does not, as the majority claims, demand that trial counsel be responsible for an "indefinite period" after filing the notice of appeal (majority op at 9).  To the contrary, the rule assures the transition between trial and appeal progresses efficiently, effectively, and expeditiously.

In contrast, the majority's holding widens the gap in representation and increases the chances of a defendant's loss of the right to appeal.  The majority's approach also runs counter to sister federal and state jurisdictions, and the overwhelming consensus of the profession that criminal defendants and the justice system are best served by ensuring representation throughout the criminal appellate process.  Other jurisdictions

---

[9] (See 2d Cir. R. 4.1 [a] ["When a defendant in a criminal case seeks to appeal, defendant's counsel, whether retained or appointed, is responsible for representing the defendant unless relieved by this court."]; 6th Cir. R. 12 [c] [1] ["Trial counsel in criminal cases must continue representation of the defendant on appeal unless relieved by the court."]; 8th Cir. R. 27 [b] [a] ["Defendant's trial counsel, whether retained or appointed, shall represent the defendant on appeal, unless the Court of Appeals grants permission to withdraw."]; 10th Cir. R. 46.3 [A] ["Trial counsel must continue to represent the defendant until either the time for appeal has elapsed and no appeal has been taken or this court has relieved counsel of that duty."]; 11th Cir. Add. IV [d] [2] ["If a party was represented in the district court by counsel appointed under the Act, such counsel shall be mindful of the obligation and responsibility to continue representation on appeal until either successor counsel is appointed under the Act or counsel is relieved by order of this court."]).

have found this type of rule workable, and, as discussed, the NACDL, whose members will be held to this high standard, champions the duty be imposed on defense counsel.  The majority's decision today is an unfortunate step in the wrong direction.

VI.

The applicable legal standards forbid counsel from creating a gap in representation.  Attorneys may not abandon defendants to navigate the criminal justice system alone without first and foremost ensuring that they understand their appellate rights and the steps necessary to exercise them, and, where necessary, assisting them in perfecting their appeals by obtaining substitute counsel.  This rule ensures seamless representation from conviction to resolution of defendant's first-tier appeal as of right.

Here, counsel failed to provide meaningful representation.  I would reverse and grant defendant's petition for a writ of error coram nobis, and remit to the Appellate Division so that defendant may pursue his appeal represented by competent appellate counsel.

People v Arjune

No. 115




WILSON, J.(dissenting):

I join Judge Rivera's dissent but write separately to emphasize that the majority's decision violates Roe v Flores-Ortega (528 US 470, 483 [2000]).  As in that case, "[t]oday's case is unusual in that counsel's alleged deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself" (id. at 483).

Criminal defendants have a Sixth Amendment right to "consult" with their attorney "when there is reason to think . . . that a rational defendant would want to appeal" (id. at 480).  The Supreme Court "employ[ed] the term 'consult' to convey a specific meaning -- advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes" (id. at 478).  The Flores-Ortega majority expected that "courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal (id. at 481 [emphasis added]).[1]

_____

[1] The concurring justices preferred a still more stringent inquiry, but agreed attorneys must "almost always" consult with their clients and can "hardly ever" leave a defendant uncounseled

- 1 -

Mr. Arjune's case is among that vast majority.  Mr. Arjune, a lawful permanent resident with cognitive impairments who defended himself against a group of attackers with a sheet rock knife that he carried for work, made the mistake of hiding the knife in fright.  The day after his conviction, his trial counsel filed a notice of appeal and then walked away from all further obligation to or communication with Mr. Arjune.  When he, and not Mr. Arjune, received in the mail the People's motion to dismiss the appeal for failure to timely perfect, he made no attempt even to contact Mr. Arjune or Mr. Arjune's parents, who had paid for his trial representation of their son.  His actions left Mr. Arjune ignorant of his appellate rights and bereft of meaningful counsel.

Even if we assume that Mr. Arjune was handed a court-issued form notice of appeal, with "paperwork to follow," Flores-Ortega contemplated and rejected such a scenario as insufficient to avoid constitutional violation.  The Supreme Court considered a circumstance in which "a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult.  In some cases, counsel might then reasonably decide that he need not repeat that information" (id. at 479-80).  That hypothetical situation differs materially from

about his appeal rights (Flores-Ortega, 528 US at 488 [Breyer, J., concurring] ; id. at 492 [Ginsburg, J., concurring]).

the one before us.  Leaving aside that Mr. Arjune does not recall receiving the written notice, that the notice he may have received is not in the record, and that he is borderline illiterate (which his trial counsel surely knew), the sample of the type of form the People say he likely received is not remotely sufficient "to substitute for counsel's duty to consult" (id.).  Remember, "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal"; no one contends the standard form does so.  Flores-Ortega's example, coupled with its holding, strongly suggests the Supreme Court of the United States would have unanimously reinstated Mr. Arjune's appeal.

In short, at the conclusion of his trial, Mr. Arjune was denied the protections of the constitution.  Today, he -- like all other defendants whose trial counsel believe that they may leave their clients unadvised and unrepresented in considering whether, when, and how to appeal -- is denied them again by this Court despite the imperatives of justice and the dictates of the Supreme Court.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Judge Stein.  Chief Judge DiFiore and Judges Fahey, Garcia and Feinman concur.  Judge Rivera dissents in an opinion, in which Judge Wilson concurs in a separate dissenting opinion.

Decided November 20, 2017